**UNITED STATES of America, Plaintiff,**

v.

**Arthur G. VENIE, d/b/a Convenience Income Tax Service, Defendant.**

**Civ. No. 88–0454.**

United States District Court, M.D. Pennsylvania.

April 19, 1988.

Sally A. Lied, Asst. U.S. Atty., Harrisburg, Pa., Robert K. Coulter, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Arthur G. Venie, Convenience Income Tax Service, Harrisburg, Pa., for defendant.

## MEMORANDUM

HERMAN, District Judge.

*Procedural Background*

On March 25, 1988, the plaintiff, United States of America ("government"), filed the present action against the defendant, Arthur G. Venie, d/b/a Convenience Income Tax Service ("Venie"), requesting that this Court enter preliminary and permanent injunctions to enjoin Venie from acting as an income tax return preparer.

The government also filed a motion for a temporary restraining order. A hearing on the motion for a temporary restraining order was held March 29, 1988. After hearing the testimony of James Carmody (group manager of the Examination Division of the Internal Revenue Service ("IRS"), Harrisburg, PA), Stephan Butler (tax auditor, IRS, Harrisburg, PA), and Venie, the court issued a temporary restraining order which enjoined Venie from preparing any federal income tax return or portion thereof and from employing any persons to prepare returns at his direction or under his control. In addition, the court scheduled a hearing on the government's request for preliminary injunctive relief for April 6, 1988, in order to provide Venie with the opportunity to retain counsel and to present evidence.

At the hearing conducted April 6, 1988, the government offered the testimony of several taxpayers whose tax returns had been prepared by Venie for the tax years 1984–86, and the testimony of Clyde Cooper, a special agent of the Internal Revenue Service who, in an undercover capacity, employed Venie to prepare his 1986 federal income tax return. The government also offered into evidence the affidavits of various other taxpayers whose tax returns had been prepared by Venie.

Proceeding *pro se*, Venie also testified at the hearing. He offered into evidence three newspaper articles,[1] eleven "Reports of Individual Income Tax Examination Changes" issued by the IRS to various taxpayers whose tax returns Venie had prepared, and correspondence to Venie from the District Counsel of the IRS dated January 4, 1988.

*Factual Background*

On January 7, 1987, the Examination Division of the IRS in Harrisburg, PA, opened a "preparer project"[2] to examine returns prepared by Venie for the tax years 1984–86. Up to the date of March

---

[1]. The articles are titled "City Tax Preparer Accused of $3 Million Fraud," March 26, 1988; "City Tax Preparer Told to Stop Business," March 30, 1988; and "New Tax Dispels Old Adage that 2 live Cheaper than 1," July 12, 1987.

[2]. A "preparer project" is a concentrated examination of tax returns prepared by a particular person.

29, 1988, the IRS had examined approximately 1,600 tax returns prepared by Venie. The amount of the deficiency per return has averaged in excess of $1,025.00. So far, the IRS has spent 3,000 hours on this preparer project. The examination of one return takes approximately two hours. The IRS expects to examine 2,800–3,000 returns by the completion of the project. This total figure represents approximately 75% of the returns prepared by Venie for the tax years 1984–86.

Upon finding a deficiency in a tax return prepared by Venie, the IRS meets with the taxpayer. Some taxpayers pay their deficiency immediately (the records indicate that $150,000 in deficiencies has been paid); other taxpayers agree to pay the deficiency periodically (currently, the IRS has agreements for payment in the amount of $900,-000). The IRS has been unsuccessful in contacting 150 taxpayers who owe taxes for deficiencies.

The IRS estimates the gross value of the understatement for those returns prepared by Venie for the tax years 1984–86 to be $1,000,000 per year. The IRS also estimates that approximately one of ten families in the Greater Harrisburg Area has been affected by this case. Most of these families are low-income families.

In order to successfully complete this project, the IRS has had to borrow tax auditors from other districts, employ additional clerical personnel, and utilize the Philadelphia Service Center.[3]

*Discussion*

District courts are statutorily authorized to issue injunctions at the request of the United States for the enforcement of the internal revenue laws. Section 7402 of Title 26, U.S.C., provides the following:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions ... orders of injunction ... to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

26 U.S.C. § 7402(a). In addition to this general grant of authority to issue injunctions, district courts are specifically authorized to enjoin income tax preparers from engaging in certain prohibited conduct. Section 7407 provides that:

> ... a civil action in the name of the United States to enjoin any person who is an income tax return preparer from further engaging in any conduct described in subsection (b) or from further acting as an income tax return preparer may be commenced at the request of the Secretary. Any action under this section shall be brought in the District Court of the United States for the district in which the income tax preparer resides or has his principal place of business or in which the taxpayer with respect to whose income tax return the action is brought resides....
>
> (b) Adjudication and decrees—In any action under subsection (a), if the court finds—
>
> (1) that an income tax preparer has—
>
> (A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
>
> (B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as an income tax return preparer,
>
> (C) guaranteed the payment of any tax refund or the allowance of any tax credit, or
>
> (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
>
> (2) that injunctive relief is appropriate to prevent the recurrence of such conduct,
>
> the court may enjoin such person from further engaging in such conduct. If the court finds that an income tax return

---

3. The above facts have been taken primarily from the testimony of James Carmody.

preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as an income tax return preparer.

26 U.S.C. § 7407.

Our first step is to determine whether Venie is an income tax return preparer under 26 U.S.C. § 7701(a)(36).[4] He calls himself a "Personal Income Tax Specialist" with 14 years experience. He charges a flat fee of $25.00 to prepare a non-itemized return and $35.00 to prepare an itemized return. Venie operates his business under the name of "Convenience Income Tax Service" and employs persons to aid him in the preparation of returns. He admits to having serviced at least 500 clients in 1984, 700 clients in 1985, and 1,000 clients in 1986. The government has introduced into evidence various taxpayer's returns with Venie's signature on the "Paid Preparer's Signature" line. *See* Plaintiff's Exhibits 3–19. Clearly, these facts reveal that under the internal revenue laws Venie is an income tax return preparer.

We must next determine if Venie, as a tax return preparer, has engaged in such conduct enumerated in subsection (b)(1) of 26 U.S.C. § 7407. Accordingly, we find that Venie has (1) engaged in conduct subject to penalty under 26 U.S.C. § 6694; (2) guaranteed the payment of tax refund; and (3) engaged in other fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws. 26 U.S.C. § 7407(b)(1)(A), (C), (D).

Section 6694 provides that if a tax return preparer's understatement of liability is due to negligent or intentional disregard of rules and regulations or due to a willful attempt to understate liability, then such person shall pay either $100 per return or $500 per return respectively.[5] Although, at this point, we do not need to determine whether Venie's understatement constitutes negligence, intentional disregard, or willfulness, we do find that on most tax returns he prepared, Venie consistently understated tax liability with full knowledge that the taxpayer was not entitled, under the internal revenue laws, to such a tax refund. Venie's understatement of tax liability falls into two categories. First, Venie consistently filed returns under the status "Head of Household" regardless of whether the person met the requirements for "Head of Household" status.[6] Second, Venie consistently overstated the amount of the taxpayer's child care expenses. In our view, Venie's conduct is clearly that conduct to which 26 U.S.C. § 6694 is addressed.

We also find that Venie, at least on one occasion, has guaranteed the payment of tax refunds. Clyde Cooper, the IRS undercover agent whose testimony we find credible, testified that Venie asked him whether he wanted to owe money to the IRS or to make money. When Cooper asked Venie to clarify this remark, Venie allegedly stated that if Cooper and his wife filed joint tax returns, they would owe money; if they each filed "Head of Household," they would make money. Cooper's testimony is the only direct evidence on this point. However, several taxpayers testified that they learned of Venie by word of mouth. *See, e.g.,* Plaintiff's Exhibits 16, 17, 18. Because most taxpayers for whom

---

**4.** 26 U.S.C. § 7701(a)(36) defines "Income Tax Return Preparer" as:

any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by subtitle A or any claim for refund of tax imposed by subtitle A. For purposes of the preceding sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund.

**5.** "Understatement of liability" means "any understatement of the net amount payable with respect to any tax imposed by subtitle A or any overstatement of the net amount creditable or refundable with respect to any such tax." 26 U.S.C. § 6694(e).

**6.** *See* 26 U.S.C. § 2(b) for definition of "Head of Household."

Venie prepared returns received refunds, it would seem that part of the reason friends and neighbors recommended Venie was due to his implicit "guarantee" of a tax refund.

■ Finally, we find that Venie has engaged in fraudulent and deceptive conduct which interferes with the proper administration of the internal revenue laws. Although Venie urges us to accept his interpretation of "Head of Household" [7] and bartering for child care,[8] it is clear from his testimony that Venie believes that our tax laws penalize married couples. Venie believes, therefore, that it is entirely legal for married persons to file "Head of Household." When Stephan Butler and Chris Pettijohn of the IRS told Venie he could not use "Head of Household" status for married couples, Venie requested them to show him the law in print which, Venie testified, they could not do.

Venie's belief that married couples are penalized is further evidenced by the newspaper article, "New Tax Dispels Old Adage that 2 live Cheaper than 1," which he offered into evidence. The opening paragraph of this article states:

> About 40% of U.S. families will pay a "marriage tax" averaging $1,100 under the new federal tax law, and lower-income couples with children will be among the hardest hit, according to a new analysis of the law.

Defendant's Exhibit 14. Even though Venie has adopted this view of the tax law, he does not have the authority to adjust the law to fit his view. His deceptive use of "Head of Household" status and his fraudulent overstatement of child care expenses on such a great scale amounts to interference with the proper administration of the internal revenue laws.

Finding that Venie is a tax return preparer who has engaged in such conduct enumerated in Subsection (b)(1) of § 7407,

we must now determine whether injunctive relief is appropriate to prevent the recurrence of such conduct. 26 U.S.C. § 7407(b)(2). We find it appropriate to consider here the four traditional factors used in determining the propriety of injunctive relief. See U.S. v. Savoie, 594 F.Supp. 678 (D.La.1984). These four factors are: "(1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the state of the balance between this harm and the injury that granting the injunction would inflict on defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." Wright and Miller, Federal Practice and Procedure § 2948.

If injunctive relief is not granted, the government will suffer irreparable harm. The evidence shows that the "preparer project" on Venie has already cost and will continue to cost the government considerable time and expense. Not only must the government audit the tax returns, but it must also meet with the taxpayers to devise some sort of payment plan and then enforce the payment plan. Further, the evidence shows that the government cannot locate many of the taxpayers who owe tax deficiencies. These deficiencies will probably never be collected as well as those deficiencies owed by persons who cannot pay. In light of this evidence, the government lacks an adequate remedy at law.[9]

Second, we must weigh the irreparable harm suffered by the government against the injury that Venie will suffer if an injunction is issued. If Venie had prepared only a few tax returns which understated tax liability, the injury inflicted upon Venie —loss of livelihood/income—by the issuance of an injunction might have outweighed the harm to the government. But here the IRS has determined that Venie has understated tax liability in an average

---

7. In sum, Venie believes that the statutory language with regard to "Head of Household" is vague and that there can be two heads of household in one home.

8. Venie believes taxpayers often barter for child care.

9. In addition, irreparable harm is generally presumed if a statute is violated. U.S. v. Buttorff, 761 F.2d 1056 (5th Cir.1985) ("when an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.").

amount of $1,000 on the 1600 tax returns which the IRS has already audited. The IRS predicts that it will examine in total 2,800–3,000 returns prepared by Venie. The IRS estimates the gross value of understatement for all returns examined to be $1,000,000.00 per year. This amount of tax deficiencies is staggering. The cost of auditing the returns, collecting the deficiencies, and absorbing deficiencies never determined (the IRS will examine only 75% of returns prepared by Venie) or incapable of being collected certainly outweighs the harm an injunction might inflict on Venie. Furthermore, we will not order Venie to cease preparing tax returns altogether; rather, if we were to determine injunctive relief is appropriate, we would limit the injunction to those matters concerning his deceptive use of "Head of Household" status and child care expenses. Thus, under an injunction Venie would be able to continue doing business, even though he would have to refrain from employing certain past practices.

The third factor we must consider is the probability that the government will succeed on the merits. As we discussed earlier, Venie's conduct is clearly subject to penalty under 26 U.S.C. § 6694, whether it be for negligent or intentional disregard of the rules and regulations or willful attempt to understate tax liability. Also, Venie is clearly preparing tax returns in a manner that substantially interferes with the proper administration of the internal revenue laws. Thus, there exists a strong probability that the government will succeed on the merits.

Last, we must consider the public interest. The eight taxpayers [10] who had tax returns prepared by Venie and who testified in court on behalf of the government revealed two common threads: (1) Venie filed their tax returns designating the status of "Head of Household" despite his knowledge that they were not entitled to "Head of Household" status, usually because these taxpayers were married during the tax year and resided with their spouses;

and (2) Venie routinely overstated child care expenses on tax returns without receiving their authority or verification. Additionally, one witness, Jack Blanton, testified that a child had been listed on his tax return as a dependent even though he had told Venie that he was separated from his wife and she had the children. Another witness, Robert Harmon, testified that, although he told Venie otherwise, Venie overstated the number of miles he commuted between jobs.

All of the witnesses testified that they now owe taxes due to Venie's preparation of their tax returns and that, as a result, they are suffering financial hardship. The witnesses also testified that they relied on Venie as a tax return specialist.

In holding himself out to the public as a tax return preparer, Venie is presumed to be familiar with the Internal Revenue Code as well as the regulations and case law regarding the Code. *See U.S. v. Savoie,* 594 F.Supp. at 684. However, Venie has consciously disregarded the law and has proceeded according to his own beliefs. Although Venie attempts to justify his view that married couples with low income are penalized by our tax laws thus implying that he is helping his clients by filing "Head of Household" status and overstating child care expenses, Venie has instead succeeded in placing literally hundreds of taxpayers in financial difficulty. It would be contrary to the public interest to permit Venie to continue this conduct. Furthermore, because of Venie's strong belief in his interpretation of "Head of Household" status and in bartering for child care, we doubt that Venie will cease to use these techniques to decrease tax liability unless the court enjoins him from doing so. *See U.S. v. Music Masters,* 621 F.Supp. 1046, 1057 (W.D.N.C.1985) ("Where there is no indication that an individual will attempt to comply with the law, injunctive relief has been determined to be appropriate.")

---

**10.** These taxpayers are William Davenport, Denise Crawley, Jack Blanton, Jeff Burke, Robert Harmon, Lillian Harmon, Patricia Baity, and Linwood Lackey. *See* Government's Exhibits 7, 8, 9, 10, 11, 12, and 13.

■ In considering these four factors, we find that injunctive relief is appropriate to prevent a recurrence of the conduct in which Venie engaged in preparing tax returns for the 1984–86 tax years. Under 26 U.S.C. § 7407, the district court may enjoin a person from acting as a tax return preparer if the "income tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D)" of the subsection and "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration" of the internal revenue laws. 26 U.S.C. § 7407(b). Although Venie has "continually and repeatedly engaged" in such conduct, it is not necessary to enjoin Venie from acting as an income tax return preparer.

We find it sufficient to enjoin him from utilizing the "Head of Household" status in a manner contradictory to the express language of 26 U.S.C. § 2 and from listing any amount of child care expenses different from that amount the taxpayer authorizes him to list. We shall also direct Venie, in his capacity of income tax return preparer to comply, at all times, with the internal revenue laws, rules and regulations.

*Findings of Fact*

1. Since January 7, 1987, when the IRS opened a "preparer project" to examine tax returns prepared by Venie, the following has occurred:

   a. 1,600 tax returns prepared by Venie have been examined;

   b. the amount of deficiency per return averages in excess of $1,025.00;

   c. 3,000 hours have been spent on the "preparer project";

   d. additional personnel has been relocated to the Harrisburg Office to aid in the project;

   e. the IRS expects to find tax deficiencies of $1,000,000.00 per year;

   f. 150 taxpayers with deficiencies cannot be located.

2. District Courts are statutorily authorized to issue preliminary injunctions at the instance of the United States to enjoin certain conduct of income tax return preparers under 26 U.S.C. § 7402 and § 7407.

3. Venie is a "personal income tax specialist" doing business as Convenience Income Tax Service. He charges a rate of $25.00 or $35.00 per return. He has many clients and signs the line on the income tax return designating the signature of the paid preparer.

4. Venie consistently understates the tax liability of taxpayers by:

   a. filing "Head of Household" status; and

   b. overstating child care expenses.

5. At least on one occasion, Venie asked a client whether he wanted to owe money or make money.

6. Venie's interpretation of "Head of Household" status is contradictory to the express statutory language.

7. Venie believes married couples are penalized by our tax laws.

8. Venie holds the belief that many of his clients barter for child care.

9. Venie designates "Head of Household" status and overstates child care expenses without the authorization or verification of the taxpayers.

10. Many of the taxpayers for whom Venie has prepared tax returns are suffering financial difficulties as a result of Venie's understatement of their tax liability.

*Conclusions of Law*

1. Venie is an income tax return preparer under 26 U.S.C. § 7701(a)(36) and 26 U.S.C. § 7407.

2. Venie has engaged in conduct subject to penalty under 26 U.S.C. § 6694.

3. Venie has guaranteed the payment of tax refunds.

4. Venie has engaged in fraudulent and deceptive conduct which interferes with the proper administration of the internal revenue laws.

5. Preliminary injunctive relief is appropriate in this case to prevent the recurrence of Venie's conduct.

6. The government will suffer irreparable harm if preliminary injunctive relief is not granted; such harm outweighs the injury inflicted on Venie by the preliminary injunction.

7. There is a strong probability that the government will succeed on the merits.

8. Public interest will best be served by the issuance of a preliminary injunction.

## ORDER

AND NOW, this 19th day of April, 1988, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED that Arthur G. Venie, individually and doing business as Convenience Income Tax Service, and all those employed by him or acting for or participating with him by or through Convenience Income Tax Service, are enjoined from:

1. Unlawfully, deceptively or fraudulently using the filing status of "Head of Household" on income tax returns;

2. Unlawfully, deceptively or fraudulently overstating child care expenses on income tax returns; and

3. Preparing any income tax return containing false or fraudulent information.

This preliminary injunction shall remain in full force and effect during the pendency of this proceeding until a final decision on the merits of the plaintiff's complaint is rendered.